Troutman Pepper Locke LLP
111 Huntington Avenue, 9th Floor
Boston, MA 02199-7613

troutman.com

**Donald E. Frechette**
donald.frechette@troutman.com
Admitted in: Connecticut, Maine, Massachusetts,
Michigan, New Hampshire, New York, Vermont

August 29, 2025

**VIA CM/ECF**

Hon. Vernon S. Broderick
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re:**  *Health In Tech, Inc. v. Ironshore Indemnity Inc.*, Case No: 1:25-cv-05301-VSB-JEW

Dear Judge Broderick:

We represent Defendant Ironshore Indemnity Inc. ("Ironshore") in connection with the above-captioned action. In accordance with Rule 5.b.iii of Your Honor's Individual Rules and Practices in Civil Cases, we write to request permission to seal/redact limited portions of Ironshore's Motion to Compel Arbitration and Stay Proceedings (the "Motion"), as well as certain exhibits thereto (together the "Redacted Documents"). The Redacted Documents contain confidential arbitrational information subject to Confidentiality Orders in place in two arbitrations involving Ironshore on one hand, and HIT and/or its current or former affiliate entities in the other. The Redacted Documents attach, quote, and describe in detail deposition testimony, proprietary claims data, financial statements, internal communications, and documents exchanged in the course of these confidential, ongoing arbitrations. The Redacted Documents contain narrow redactions that remove this information from the public record.

Ironshore is an Illinois-domiciled insurer with its principal place of business in Boston, Massachusetts. HIT is a Nevada corporation headquartered in Stuart, Florida. Relevant here, International Captive Exchange ("ICE") and Roscommon Insurance Company ("RIC") (at the time, two affiliates of HIT), entered into a series of contracts with Ironshore. In one contract, Ironshore[1] agreed to provide reinsurance coverage for RIC's stop loss insurance policies. Additionally, in another contract, ICE agreed to serve as Ironshore's agent for soliciting, underwriting, binding, and issuing employer stop-loss insurance policies, as well as administering claims under those policies. Ironshore commenced two separate arbitrations against HIT, ICE and RIC alleging various contractual breaches against all three entities.

---

[1] RIC and Ironshore subsequently executed a novation under which another Ironshore affiliate, Ironshore Specialty Insurance Company, assumed Ironshore's obligations.

On June 5, 2025, the arbitration panel in the Ironshore/ICE/HIT arbitration issued a Confidentiality Agreement and Protective Order (the "Ironshore/ICE/HIT Confidentiality Order"), attached hereto as **Exhibit 1**. Likewise, on October 30, 2024, the arbitration panel in the Ironshore/RIC arbitration entered a substantively identical Confidentiality Agreement and Protective Order (the "RIC Confidentiality Order", together the "Confidentiality Orders"), attached hereto as **Exhibit 2**. Pursuant to the terms of these Confidentiality Orders,

> …all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents and correspondence created for the arbitration or produced in the proceedings by the opposing party or third-parties, exhibits, the result and all other terms of the final award and any interim discussions, and all correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "**Arbitrational Information**"), whether generally or specifically will be kept confidential and not disclosed or characterized.

Ex. 1 at ¶ 2 (emphasis in original); Ex. 2 at ¶ 2. The Confidentiality Orders permit the parties to disclose arbitral information "as is necessary in connection with court proceedings relating to any aspect of the arbitration…" Ex. 1 at ¶ 3.b; Ex. 2 at ¶ 3.b. Accordingly "subject to court approval, all submissions of Arbitrational information to a court shall be sealed and/or redacted so as to limit disclosure of Arbitrational Information." Ex. 1 at ¶ 3; Ex. 2 at ¶ 3. Because the Redacted Documents contain Arbitrational Information from two ongoing arbitrations, Ironshore respectfully requests leave to file them under seal or in redacted form.

While there is a presumption of public access to judicial documents, courts have "considerable discretion in determining whether good cause exists to overcome the presumption of open access to documents." *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000). In doing so, courts must balance "the competing interests of public access against the privacy interests of the parties," among other factors. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *see also* Fed. R. Civ. P. 26. Where the presumption of public access is outweighed by such factors, courts routinely grant requests to seal. *Lugosch*, 435 F.3d at 119. *In re IBM Arb. Agreement Litig.*, No. 21-cv-6296-JMF, 2022 WL 3043220, at *3 (S.D.N.Y. Aug. 2, 2022), *aff'd*, 76 F.4th 74 (2d Cir. 2023) ("The weaker presumption of public access in this case is readily outweighed by the FAA's strong policy protecting the confidentiality of arbitral proceedings…")

Because "[c]onfidentiality is a paradigmatic aspect of arbitration," the Second Circuit has "affirmed decisions to keep judicial documents subject to confidentiality provisions in arbitration or settlement agreements under seal." *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 71 (2d Cir. 2023), cert. denied, 144 S. Ct. 1011, 218 L. Ed. 2d 175 (2024) (reversing district court's grant of a motion to unseal arbitral documents because "[i]n short, the presumption of access to judicial documents is outweighed here by the interest in confidentiality"); s*ee In re IBM Arb. Agreement Litig.*, 2022 WL 3043220, at *3; *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S. Ct. 2304, 2309 (2013) (pursuant to the FAA "courts must 'rigorously enforce' arbitration agreements according to their terms"). Indeed, courts in this District have denied motions to unseal arbitral information, citing the importance of confidentiality under the Federal Arbitration Act. *Chapey v. Khan*, No. 25-cv-2266-PAE, 2025 WL 1078300, *1–2 (S.D.N.Y. Apr. 9, 2025)

("[T]here is no need to unseal any of the documents in question to enable the public to better understand a judicial opinion resolving a contested issue arising from an arbitration.").

The redactions in the Redacted Documents only extend to preserve the confidentiality of the arbitral proceedings. Here, the Ironshore/ICE/HIT arbitration is proceeding in accord with the American Arbitration Association rules (attached hereto as **Exhibit 3**), which contemplate the entry of orders "concerning the confidentiality of the arbitration proceedings or of any other matters in connection with the arbitration" and may enter orders for the protection of "trade secrets and confidential information." Ex. 3, R-45(b). The Ironshore/RIC arbitration is proceeding under ARIAS-U.S. Procedures for the Resolution of U.S. Insurance and Reinsurance Disputes, Regular Panel Version, dated April 2004, which directs parties to "use their best efforts to maintain this confidentiality when pursuing any of the exceptions [to confidentiality], including the filing of pleadings under seal when permitted." Attached as **Exhibit 4**, Section 7.2. In reliance on the Confidentiality Orders, Ironshore, HIT, ICE, and RIC submitted to depositions and produced tens of thousands of confidential documents. The confidentiality of the arbitrations—and by extension the Arbitrational Information created during them—was part and parcel of the arbitrations, both of which are still ongoing. Accordingly, Ironshore has a significant interest in preserving the confidentiality of the Arbitration Information.

Counsel for HIT and Ironshore, as directed under the Local Rules, met and conferred on August 25, 2025, to discuss this letter motion and the universe of documents and information that Ironshore seeks to seal and/or redact. HIT indicated that it would not oppose Ironshore's request. Moreover, the parties agreed that the scope of Ironshore's request is sufficiently narrow. Ironshore does not believe there is any public interest served by revealing Arbitrational Information from ongoing arbitrations. For these reasons, Ironshore respectfully requests this Court's permission to redact/seal the Redacted Documents.

We appreciate the Court's attention to this matter.

Respectfully submitted,

TROUTMAN PEPPER LOCKE LLP


By */s/ Donald E. Frechette*
    Donald E. Frechette

cc: All counsel of record (via CM/ECF)

**APPLICATION GRANTED
SO ORDERED**
VERNON S. BRODERICK
U.S.D.J.

Date: September 12, 2025